**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IDUNN IP HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.; and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Civil Action No. 2:26-cv-00806<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IDUNN IP Holdings LLC files this Complaint for Patent Infringement against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants"), alleging as follows:

**NATURE OF SUIT**

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**THE PARTIES**

2. Plaintiff IDUNN IP Holdings LLC ("IDUNN" or "Plaintiff") is a limited liability company duly formed under the laws of the State of Texas with a place of business at 8140 Walnut Hill Lane, Suite 615, Dallas, Texas 75231.

3. IDUNN is the assignee and owns all rights, title, and interest in and to U.S. Patent No. 7,445,368; No. 7,760,278; No. 8,047,668; No. 8,373,624; No. 8,956,033; No. 9,000,425; No. 9,436,305; and No. 9,632,236 (collectively, the "Asserted Patents").

4. Defendant Samsung Electronics Co., Ltd. ("SEC") is an entity organized under the laws of the Republic of Korea with a principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do 16677, Republic of Korea, and may be served with process pursuant to the provisions of the Hague Convention.

5. Defendant Samsung Electronics America, Inc. ("SEA") is an entity organized under the laws of the State of New York with a principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. SEA is authorized to do business in the State of Texas, maintains a regular and established place of business within this District at 6625 Excellence Way, Plano, Texas 75023, and may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6. On information and belief, SEA is a wholly owned subsidiary of SEC.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

### I. SEC

8. SEC is subject to personal jurisdiction in this Court. On information and belief, this Court has specific personal jurisdiction over SEC because IDUNN's claims of patent infringement arise out of or relate to SEC's acts of patent infringement within and directed to this District, and because SEC has purposefully directed its activities at the State of Texas and this District as alleged below.

9. On information and belief, SEC, directly and/or through subsidiaries, agents, representatives, or intermediaries (including SEA) has conducted, and does conduct, substantial business in this District, including but not limited to: (i) at least a portion of the acts of infringement

herein alleged; (ii) purposefully and voluntarily placing one or more infringing products and services into the stream of commerce with the expectation that they will be purchased by consumers in this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District. Thus, SEC is subject to this Court's specific personal jurisdiction pursuant to the Due Process Clause and the Texas Long-Arm Statute.

10. On information and belief, SEC designs, develops, manufactures, supplies, and/or directs the manufacture and commercialization of the Accused Products. SEC purposefully places Accused Products into the stream of commerce with the expectation and/or intent that they will be purchased throughout the United States, including in Texas and in this District.

11. SEC has knowledge that the Accused Products are distributed, marketed, offered for sale, and sold throughout the United States through an established distribution network that includes SEA and other distributors. SEC derives substantial revenue from the sale of the Accused Products in the United States, including in Texas and in this District.

12. On information and belief, SEA is wholly owned and controlled by SEC, which directs, authorizes, and/or ratifies SEA's activities relating to the importation, distribution, marketing, and sale of the Accused Products in the United States, including in this District.

13. On information and belief, SEA operates as SEC's agent and/or alter ego with respect to the distribution, marketing, and sale of the Accused Products in the United States. SEC and SEA operate in an integrated manner with coordinated product development, branding, marketing, sales, and distribution strategies. SEC exercises control over SEA's activities and benefits financially from SEA's infringing activities in this District.

14. On information and belief, SEC has purposefully directed activities toward this District by, among other things, designing and supplying Accused Products intended for distribution in this District, coordinating with distribution channels that deliver Accused Products into this District, and providing technical, marketing, and commercial support directed to customers in the United States, including in the State of Texas.

15. IDUNN's claims arise out of or relate to SEC's activities directed toward the State of Texas and this District, including SEC's design, manufacture, supply, and commercialization of Accused Products that are distributed, offered for sale, and/or sold in this District.

16. In addition, or in the alternative, SEC is subject to this Court's personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), as the claims herein alleged arise under federal law and the exercise of jurisdiction is consistent with the United States Constitution and laws.

17. The exercise of personal jurisdiction over SEC would not offend traditional notions of fair play and substantial justice.

18. SEC has repeatedly declined to contest personal jurisdiction in this District in patent infringement actions involving its consumer devices. *See, e.g., Ericsson Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-00010-JRG, Defendants' Answer and Counterclaims at ¶ 8, Dkt. No. 7 (E.D. Tex. Feb. 4, 2021) ("Samsung, for purposes of this case only, will not challenge personal jurisdiction in the Eastern District of Texas."); *Clear Imaging Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-00326, Samsung Defendants' Answer at ¶ 7, Dkt. No. 23 (E.D. Tex. Jan. 22, 2020) ("Samsung does not contest, solely for the purpose of the present litigation, whether personal jurisdiction over them properly lies in this District."). Accordingly, the exercise of personal jurisdiction over SEC is reasonable and fair because SEC intentionally exploits the United States market, including the markets in Texas and this District, derives substantial economic

benefit from sales of the Accused Products nationwide, including in Texas and this District, and can reasonably expect to be brought into court in this District where its products are distributed, offered for sale, and/or sold.

19. Venue is proper as to SEC because SEC is not resident in the United States and "may be sued in any judicial district." 28 U.S.C. § 1391(c)(3); *see In re HTC Corp.*, 889 F.3d 1349, 1354-57 (Fed. Cir. 2018) (the venue laws, including 28 U.S.C. § 1400(b), do not restrict the location of suits against foreign defendants).

**II. SEA**

20. SEA is subject to personal jurisdiction in this Court. On information and belief, this Court has specific personal jurisdiction over SEA because IDUNN's claims of patent infringement arise out of or relate to SEA's acts of patent infringement within and directed to this District, and because SEA has purposefully directed its activities at the State of Texas and this District as alleged below.

21. On information and belief, SEA, directly and/or through parents, subsidiaries, agents, representatives, or intermediaries (including SEC) has conducted, and does conduct, substantial business in this District, including but not limited to: (i) at least a portion of the acts of infringement herein alleged; (ii) purposefully and voluntarily placing one or more infringing products and services into the stream of commerce with the expectation that they will be purchased by consumers in this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District. Thus, SEA is subject to this Court's specific personal jurisdiction pursuant to the Due Process Clause and the Texas Long-Arm Statute.

22. On information and belief, SEA engages in wide-ranging promotional activities for display devices, including the Accused Products, throughout Texas and in this District, including television, print, online, and direct-mail advertisements. For example, SEA offers to sell and/or sells infringing products directly to customers in the United States, including in this District, through its official online marketplace, www.samsung.com/us, which allows consumers, businesses, and other end users throughout the United States and this District to purchase infringing products, including the Accused Products.

23. On information and belief, SEA has substantial connections to the State of Texas, including within this District. For example, SEA maintains its flagship North American campus at 6625 Excellence Way, Plano, Texas 75023, a regular and established place of business in this District. SEA maintains additional offices in this District, including at 1303 East Lookout Drive, Richardson, Texas 75082 and 2800 Technology Drive, Suite 200, Plano, Texas 75074, as well as a Samsung retail store at 2601 Preston Road, #100, Frisco, Texas 75034 and a customer support center at 3580 Preston Road, Suite 100, Frisco, Texas 75034.

24. SEA's Plano campus is a physical place of business in this District from which SEA carries out its business.[1] On information and belief, SEA employs full-time personnel, including engineers and senior managers, at its Plano campus, and Samsung's business operations relating to its display-bearing consumer products, including mobile devices, are conducted from that

[1]*See Clear Imaging Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-00326, Samsung Defendants' Answer at ¶ 10, Dkt. No. 23 (E.D. Tex. Jan. 22, 2020); *R2 Solutions LLC v. Samsung Elecs. Am., Inc.*, No. 4:21-cv-00089, Answer at ¶ 2, Dkt. No. 14 (E.D. Tex. Apr. 19, 2021) ("Samsung admits that SEA is a New York corporation with a place of business at 6625 Excellence Way, Plano, Texas 75023.").

facility. Samsung has announced that SEA is relocating its U.S. headquarters from New Jersey to its existing Plano campus, "building on [its] 30-year presence in the state."[2]

25. SEA, directly and/or through intermediaries, imports, distributes, markets, offers for sale, sells, and supports the Accused Products throughout the United States, including within Texas and this District.

26. SEA has purposefully directed its commercial activities toward Texas and this District by, among other things, maintaining operations here, supplying Accused Products to customers throughout the State of Texas and in this District, and deriving substantial revenue from the sale of Accused Products throughout the State of Texas and in this District.

27. IDUNN's claims arise out of or relate to SEA's acts of infringement in this District, including SEA's importation, offering for sale, and sale of the Accused Products.

28. Personal jurisdiction over SEA in this action comports with the Due Process Clause such that exercise of personal jurisdiction over SEA would not offend traditional notions of fair play and substantial justice. For example, SEA has conducted and regularly conducts business within this District. SEA has admitted in a prior patent infringement action that this Court may exercise personal jurisdiction over it and that venue is proper as to SEA, *see R2 Solutions LLC v. Samsung Elecs. Am., Inc.*, No. 4:21-cv-00089, Defendant Samsung Electronics America, Inc.'s Answer at ¶¶ 5-6, 8, Dkt. No. 14 (E.D. Tex. Apr. 19, 2021) ("Samsung admits, for the purposes of this action only, that this Court may exercise personal jurisdiction over SEA."), and Samsung has admitted that SEA maintains places of business in this District, *see Clear Imaging Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-00326, Samsung Defendants' Answer at ¶ 10, Dkt. No.

---

[2]Matthew Fazelpoor, Samsung moving US headquarters from New Jersey to Texas, NJBIZ (June 1, 2026), https://njbiz.com/samsung-us-headquarters-move-new-jersey-texas/ (quoting Samsung statement: "we are relocating our U.S. headquarters from New Jersey to our existing campus in Plano, Texas, building on our 30-year presence in the state").

23 (E.D. Tex. Jan. 22, 2020) ("Samsung admits that SEA maintains places of business in Plano, Texas, including at 6625 Excellence Way, Plano, TX, 75023, and that SEA employs full-time employees in this District."). SEA has purposefully availed itself of the privileges of conducting business within this District, and SEA has sought protection and benefit from the laws of the State of Texas by placing infringing products into the stream of commerce through an established distribution channel with awareness and/or intent that they will be purchased by consumers in this District. Having purposefully availed itself of the privilege of conducting business within this District, SEA should reasonably and fairly anticipate being brought into court here.

29. Venue is proper against SEA under 28 U.S.C. § 1400(b) because it has maintained a regular and established physical place of business in this District and has committed acts of patent infringement in this District.

## ASSERTED PATENTS

30. The Asserted Patents arise from the research and development of a family of Taiwanese display manufacturers (Innolux Display Corp., Chi Mei Optoelectronics Corporation, and TPO Displays Corp., together with their affiliates, including Innocom Technology (Shenzhen) Co., Ltd.). Innolux Display Corp. completed its merger with Chi Mei Optoelectronics Corporation and TPO Displays Corp. on March 18, 2010, and was renamed Chimei Innolux Corporation; in December 2012, it changed its name to Innolux Corporation (collectively with its predecessors and affiliates, "Innolux"). Innolux is one of the world's largest manufacturers of thin-film-transistor liquid crystal display ("TFT-LCD") panels and other display modules.

31. IDUNN acquired the Asserted Patents from Innolux Corporation, including all rights, title, and interest in and to the Asserted Patents and the right to sue and recover for past

infringement. The assignments of the Asserted Patents to IDUNN have been recorded with the United States Patent and Trademark Office.

**I. THE ’368 PATENT**

32. United States Patent No. 7,445,368 (the "’368 Patent") is entitled "Backlight Module and Liquid Crystal Display Using Same." The United States Patent and Trademark Office duly and legally issued the ’368 Patent on November 4, 2008, from U.S. Patent Application No. 11/645,440, filed on December 26, 2006.

33. The ’368 Patent claims priority to Taiwanese Patent Application No. 94/146358, filed on December 23, 2005.

34. IDUNN is the current owner of all rights, title, and interest in and to the ’368 Patent, including the right to sue for past damages.

35. A true and correct copy of the ’368 Patent is attached as Exhibit A and is incorporated by reference.

36. The ’368 Patent generally relates to a backlight module for a liquid crystal display in which the reflection sheets that confine the backlight's illumination are formed integrally with the supporting member that carries the light-emitting diodes and with the light guide plate, forming a light-confining structure at the edge of the light guide plate. *See* ’368 Patent, Abstract; *id.*, Summary.

37. The ’368 Patent solves technological problems relating to the light source and assembly of backlight modules. As the ’368 Patent explains, conventional backlight modules used a cold cathode fluorescent lamp ("CCFL") received in a separate reflection cover, together with wedges, rings, and wiring to fix the lamp in place. *See* ’368 Patent, Background; *id.*, FIG. 7. The CCFL "contains mercury which is harmful to environment," and "the process of arranging the

illumination device . . . in the cover . . . makes the assembly of the backlight module unduly burdensome." *Id.*, Background.

38. The '368 Patent discloses, in exemplary embodiments, a backlight module comprising a light guide plate having a light entering surface; an illumination device with light-emitting diodes formed at, and electrically connected to, a supporting member; and two reflection sheets integrally formed with the supporting member and the light guide plate, one directly covering a part of the top side, and the other a part of the bottom side, of the light guide plate adjacent to the light entering surface. *See* '368 Patent, Abstract; *id.*, FIG. 1. As the '368 Patent explains, the reflection sheets and the supporting member "cooperate with each other to form a generally U-shaped sided structure" that "is designed to confine light beams and prevent the light beams from leaking therefrom, thereby increasing the utilization of the light beams," *id.*, Detailed Description, while the integral construction simplifies assembly of the module, *id.*

39. Defendants are not licensed to the '368 Patent and were not licensed during the six years preceding this lawsuit.

**II. THE '278 PATENT**

40. United States Patent No. 7,760,278 (the "'278 Patent") is entitled "Liquid Crystal Display Comprising a Ground Electrode and Method for Manufacturing the Same." The United States Patent and Trademark Office duly and legally issued the '278 Patent on July 20, 2010, from U.S. Patent Application No. 11/974,846, filed on October 16, 2007.

41. The '278 Patent claims priority to Taiwanese Patent Application No. 95/138082, filed on October 16, 2006.

42. IDUNN is the current owner of all rights, title, and interest in and to the '278 Patent, including the right to sue for past damages.

43. A true and correct copy of the ’278 Patent is attached as Exhibit B and is incorporated by reference.

44. The ’278 Patent generally relates to a liquid crystal panel with an electrode arrangement at the periphery of the panel that protects the panel from damage caused by electrostatic discharge. *See* ’278 Patent, Field of the Invention.

45. The ’278 Patent solves a technological problem relating to electrostatic discharge in liquid crystal display panels. As the ’278 Patent explains, the thin film transistors and driver circuitry of a liquid crystal panel are highly sensitive to static electricity. In conventional panels, a transparent conductive layer on the color filter substrate extended to the edge of the panel, where it could pick up electrostatic charge from the environment and conduct it into the interior of the panel, damaging circuit elements. *See* ’278 Patent, General Background (“the transparent conductive layer . . . of the CF substrate . . . can introduce the electro static into the liquid crystal panel . . . . The electro static will damage the electrical elements in the liquid crystal panel”).

46. The ’278 Patent discloses, in exemplary embodiments, a liquid crystal panel in which the conductive layer of the color filter substrate does not cover the peripheral region of the substrate; a ground electrode is formed at the peripheral region of the thin film transistor substrate, generally adjacent to the common electrode and insulated from the common electrode by a groove; and the sealant that joins the two substrates encloses the conductive layer and the common electrode and covers the ground electrode. *See* ’278 Patent, Summary; *id.*, Detailed Description. With this geometry, the conductive layer is enclosed by the sealant and is not exposed to the external atmosphere, so that the introduction of static electricity to the conductive layer is avoided and the electrical elements within the panel are protected from damage caused by electrostatic discharge. *See id.*, Detailed Description (“the electro static being introduced to the enclosed

transparent conductive electrode . . . can be avoided. Therefore, the inner electrical elements can be prevented from damaging by the electro static discharging phenomena.”).

47. Defendants are not licensed to the ’278 Patent and were not licensed during the six years preceding this lawsuit.

**III. THE ’668 PATENT**

48. United States Patent No. 8,047,668 (the “’668 Patent”) is entitled “Display Device, Backlight Module of Such Display Device, and Method of Fixing Circuit Board on Such Backlight Module.” The United States Patent and Trademark Office duly and legally issued the ’668 Patent on November 1, 2011, from U.S. Patent Application No. 12/392,213, filed on February 25, 2009. The ’668 Patent claims priority to Taiwanese Patent Application No. 97/106693, filed on February 26, 2008.

49. IDUNN is the current owner of all rights, title, and interest in and to the ’668 Patent, including the right to sue for past damages.

50. A true and correct copy of the ’668 Patent is attached as Exhibit C and is incorporated by reference.

51. The ’668 Patent generally relates to a display device and backlight module in which a circuit board is fixed in place using structures integrated with the backlight module’s lamp cover. *See* ’668 Patent, Abstract.

52. The ’668 Patent solves a technological problem relating to the mechanical assembly of display devices. As the ’668 Patent explains, the circuit boards that drive a display panel must be mechanically anchored behind the backlight module. Conventional approaches used screws or adhesives, which add parts, assembly steps, cost, and thickness, and can be unreliable. *See* ’668 Patent, Background (describing that a loosely fastened circuit board “may be tilted or bent, not

only making the connector . . . easily prone to damage and creating a poor contact between the cable . . . and the circuit board . . . , but also affecting the product quality”).

53. The ’668 Patent discloses, in exemplary embodiments, a display device in which the lamp cover (the reflective cover that partially surrounds the backlight’s light source) includes at least one protruding portion located at its outer surface and integrated with the lamp cover so as to serve as a fixing structure. The circuit board is disposed on the outer surface of the lamp cover, and the protruding portion contacts a fixing portion of the circuit board, “constraining movements of the circuit board relative to the lamp cover” without separate fasteners. ’668 Patent, Summary; *see id.*, Abstract.

54. Defendants are not licensed to the ’668 Patent and were not licensed during the six years preceding this lawsuit.

**IV. THE ’624 PATENT**

55. United States Patent No. 8,373,624 (the “’624 Patent”) is entitled “Organic Light Emitting Display (OLED) Devise, Modules, and Electronic Devices.” The United States Patent and Trademark Office duly and legally issued the ’624 Patent on February 12, 2013, from U.S. Patent Application No. 12/316,938, filed on December 17, 2008.

56. The ’624 Patent claims priority to Taiwanese Patent Application No. 97/100315, filed on January 4, 2008.

57. IDUNN is the current owner of all rights, title, and interest in and to the ’624 Patent, including the right to sue for past damages.

58. A true and correct copy of the ’624 Patent is attached as Exhibit D and is incorporated by reference.

59. The ’624 Patent generally relates to an organic light emitting display (“OLED”) device architecture in which the black matrix layer on the color filter substrate is used as an electrical pathway to deliver power to the cathode of the OLED pixels. *See* ’624 Patent, Abstract.

60. The ’624 Patent solves a technological problem relating to the reliability of the cathode connection in OLED displays. As the ’624 Patent explains, the cathode of an OLED display is an extremely thin metal film. In conventional designs, connecting the cathode to a power line required the thin cathode film to traverse steps in the underlying structure, where poor step coverage can crack the film and break the electrical connection, degrading reliability. *See* ’624 Patent, Background (“the contact area between the cathode and the cathode contact breaks easily due to bad step coverage of the cathode, which results in breakage or collapse of the cathode and further affects the quality and reliability of the device”).

61. The ’624 Patent discloses, in exemplary embodiments, an OLED device in which the black matrix layer (the opaque, conductive grid that encloses the color filter elements) is extended into a region corresponding to the peripheral region of the active matrix substrate. A first conductive component electrically connects the control circuit on the active matrix substrate to the extension of the black matrix layer, and a second conductive component electrically connects the black matrix layer to the cathode. Power is thereby routed to the cathode through the black matrix, avoiding the fragile step-coverage connection of conventional designs. *See* ’624 Patent, Abstract; *id.*, Detailed Description (“breakage or collapse of the cathode due to the bad step coverage of the cathode may be completely prevented and quality and reliability of the device is further improved”).

62. Defendants are not licensed to the ’624 Patent and were not licensed during the six years preceding this lawsuit.

**V. THE ’033 PATENT**

63. United States Patent No. 8,956,033 (the “’033 Patent”) is entitled “Display Device and Backlight Module.” The United States Patent and Trademark Office duly and legally issued the ’033 Patent on February 17, 2015, from U.S. Patent Application No. 13/456,917, filed on April 26, 2012.

64. IDUNN is the current owner of all rights, title, and interest in and to the ’033 Patent, including the right to sue for past damages.

65. A true and correct copy of the ’033 Patent is attached as Exhibit E and is incorporated by reference.

66. The ’033 Patent generally relates to a display device and backlight module with a frame structure that reduces the width of the border surrounding the active display area. *See* ’033 Patent, Abstract.

67. The ’033 Patent solves a technological problem relating to the border, or bezel, of display devices. As the ’033 Patent explains, conventional backlight modules used a plastic casing and adhesive to join the backlight module to the display panel, a construction that required a wide border around the display area. The ’033 Patent describes the width of the border as “a bottleneck of the development of the display device.” ’033 Patent, Background.

68. The ’033 Patent discloses, in exemplary embodiments, a display device comprising a bottom frame, a light guide disposed above the bottom frame, an optical film structure disposed above the light guide, and a top frame that covers a periphery of the optical film structure and covers a lateral side of the bottom frame. *See* ’033 Patent, Abstract. The top frame includes a first board, disposed between the optical film structure and the display panel, and a second board connected to the first board and covering a lateral surface of the light guide. This thin frame

structure clamps the backlight components together and masks the edge of the optical films while occupying far less width than the conventional plastic casing, enabling a narrower border. *See id.*, Summary; *id.*, Detailed Description.

69. Defendants are not licensed to the ’033 Patent and were not licensed during the six years preceding this lawsuit.

**VI. THE ’425 PATENT**

70. United States Patent No. 9,000,425 (the “’425 Patent”) is entitled “Organic Light Emitting Diode, and Panel and Display Using the Same.” The United States Patent and Trademark Office duly and legally issued the ’425 Patent on April 7, 2015, from U.S. Patent Application No. 13/934,367, filed on July 3, 2013.

71. The ’425 Patent claims priority to Taiwanese Patent Application No. 10/1124764, filed on July 10, 2012.

72. IDUNN is the current owner of all rights, title, and interest in and to the ’425 Patent, including the right to sue for past damages.

73. A true and correct copy of the ’425 Patent is attached as Exhibit F and is incorporated by reference.

74. The ’425 Patent generally relates to an organic light emitting diode having a resonance enhancing layer disposed between a reflecting layer and a first electrode. *See* ’425 Patent, Abstract.

75. The ’425 Patent solves a technological problem relating to optical resonance effects in OLED devices. As the ’425 Patent explains, in an OLED having a reflective layer below the organic light-emitting stack and a partially transparent electrode above it, the structure forms an optical cavity in which certain wavelengths of light are reinforced and others are suppressed. In conventional thin-cavity designs, this microcavity effect distorts the balance of emitted colors and

causes the color of emitted light to shift with viewing angle. *See* ’425 Patent, Summary (describing the object “to provide an organic light emitting diode (OLED) . . . which can prevent the problem of color shifts from side viewing angles and improve light color and light emitting efficiency”).

76. The ’425 Patent discloses, in exemplary embodiments, an organic light emitting diode comprising a reflecting layer; a resonance enhancing layer disposed on the reflecting layer; a first electrode disposed on the resonance enhancing layer; an organic layer disposed on the first electrode; and a second electrode disposed on the organic layer, wherein the thickness of the resonance enhancing layer is in a range from 500 nm to 10 µm. *See* ’425 Patent, Abstract; *id.*, claim 1 (“a thickness of the resonance enhancing layer is in a range from 500 nm to 10 µm”). By making the optical cavity substantially thicker than in conventional designs, the resonance modes of the cavity become closely spaced across the visible spectrum, reinforcing emitted light more uniformly across wavelengths, improving emission efficiency and reducing variation with viewing angle. *See id.*, Detailed Description.

77. Defendants are not licensed to the ’425 Patent and were not licensed during the six years preceding this lawsuit.

**VII. THE ’305 PATENT**

78. United States Patent No. 9,436,305 (the “’305 Patent”) is entitled “Touch Display Apparatus.” The United States Patent and Trademark Office duly and legally issued the ’305 Patent on September 6, 2016, from U.S. Patent Application No. 14/221,991, filed on March 21, 2014.

79. The ’305 Patent claims priority to U.S. Provisional Application No. 61/804,429, filed on March 22, 2013, and to Taiwanese Patent Application No. 10/2125559, filed on July 17, 2013.

80. IDUNN is the current owner of all rights, title, and interest in and to the ’305 Patent, including the right to sue for past damages.

81. A true and correct copy of the ’305 Patent is attached as Exhibit G and is incorporated by reference.

82. The ’305 Patent generally relates to a touch display apparatus in which a buffer element disposed between the substrate of the touch panel and the lower substrate of the display panel provides a buffer between the two substrates. *See* ’305 Patent, Abstract.

83. The ’305 Patent solves a technological problem relating to the mechanical structure of touch display devices. In the touch display apparatus described in the ’305 Patent, the lower substrate of the display panel extends beyond the upper substrate along at least one side, and the substrate of the touch panel extends beyond the upper substrate of the display panel along a corresponding side, leaving an edge region of the touch substrate disposed above, and spaced from, the lower substrate. As the ’305 Patent explains, a touch substrate is subject to deformation caused by touch control, and a touch substrate that is adequately supported does not require further strengthening treatment. *See* ’305 Patent, Detailed Description (“the display panel . . . can be thus considered to support the touch substrate . . . at a certain level, and therefore the touch panel . . . is unnecessary to be further treated with a strengthening process”).

84. The ’305 Patent discloses, in exemplary embodiments, a touch display apparatus comprising a display panel having first and second substrates, a touch panel including a touch substrate, and a buffer element disposed between the touch substrate and the first substrate adjacent to the overhanging side of the touch substrate. Along the buffer element’s lengthwise direction, the buffer element has a first length that is less than or equal to the length of the first substrate and greater than or equal to the length of the touch substrate, so that the buffer element supports the full overhanging edge of the touch substrate. *See* ’305 Patent, Abstract; *id.*, FIGs. 1-3.

85. Defendants are not licensed to the ’305 Patent and were not licensed during the six years preceding this lawsuit.

**VIII. THE ’236 PATENT**

86. United States Patent No. 9,632,236 (the “’236 Patent”) is entitled “Backlight Module and Display Device Using the Same.” The United States Patent and Trademark Office duly and legally issued the ’236 Patent on April 25, 2017, from U.S. Patent Application No. 15/335,168, filed on October 26, 2016, which is a continuation of U.S. Patent Application No. 14/456,175, filed on August 11, 2014, now U.S. Patent No. 9,513,425.

87. The ’236 Patent claims priority to Taiwanese Patent Application No. 10/2132146, filed on September 6, 2013.

88. IDUNN is the current owner of all rights, title, and interest in and to the ’236 Patent, including the right to sue for past damages.

89. A true and correct copy of the ’236 Patent is attached as Exhibit H and is incorporated by reference.

90. The ’236 Patent generally relates to a backlight module and display device that prevent blue light from leaking from the edges of a quantum-dot display. *See* ’236 Patent, Field of the Invention (“a backlight module and a display device capable of preventing blue light leaks from the edge of the display”).

91. The ’236 Patent solves a technological problem specific to quantum-dot backlights. As the ’236 Patent explains, to raise the color saturation of a liquid crystal display, a quantum dot enhancement film (“QDEF”) is applied over a backlight of blue light-emitting diodes; quantum dot phosphors in the film convert the incident blue light into light of different wavelengths, widening the spectrum of the resulting white light. *See* ’236 Patent, Description of the Related Art.

The edges of the QDEF, however, must be kept a distance away from the surrounding frame to prevent compressive deformation of the film due to thermal expansion, and blue light emitted through that gap does not pass through the QDEF, "such that the user could become conscious of blue light leaks from the four edges of the display." *Id.*

92. The '236 Patent discloses, in exemplary embodiments, a backlight module in which a frame disposed outside the light guiding plate has a first extension portion covering the first edge of the QDEF (adjacent to the first side surface of the light guiding plate) and a second extension portion covering the second edge of the QDEF (adjacent to the second, light-source side of the light guiding plate), with the extension portions dimensioned such that the distance between the end of the second extension portion and the second edge of the QDEF is greater than the corresponding distance at the first edge. *See* '236 Patent, claim 1; *id.*, Brief Summary of the Invention. With this geometry, "blue light leaks from edges of the display can be prevented to improve the visual experience." *Id.*, Brief Summary of the Invention.

93. Defendants are not licensed to the '236 Patent and were not licensed during the six years preceding this lawsuit.

## **THE ACCUSED PRODUCTS**

94. On information and belief, Samsung designs, develops, makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, display devices, including at least monitors, smartphones, foldable smartphones, wearable devices, laptop computers, televisions, and home appliances with integrated displays, such as the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA) (the "G30D monitor"), the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US) (the "Galaxy Book4"), the Samsung S30GD 24-inch Essential monitor (Model No.

LS24D304GANXZA) (the "S30GD monitor"), the Samsung Galaxy S24 smartphone (the "Galaxy S24"), the Samsung Galaxy Z Fold3, Galaxy Z Fold4, Galaxy Z Fold5, Galaxy Z Fold6, Galaxy Z Fold7, and Galaxy Z Flip7 foldable smartphones (together, the "Galaxy foldables"), Samsung Galaxy Watch smartwatches (the "Galaxy Watch wearables"), the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA) (the "QN70H television"), and the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA) (the "Family Hub refrigerator"), and other substantially similar display devices that utilize the inventions of one or more of the Asserted Patents (collectively, the "Accused Products"). The Accused Products alleged to infringe each Asserted Patent are the products identified in the corresponding Count below.

95. Samsung has advertised, offered for sale, and sold, and continues to advertise, offer for sale, and sell, the Accused Products, at least through Samsung's website (https://www.samsung.com/us), through the official Samsung store on Amazon, and other online marketplaces, and through retail partners such as Best Buy and Walmart.

96. For example, Samsung offers for sale and sells at least some of the Accused Products directly to consumers in the United States, including in this District, via its official website. *See, e.g.,* https://www.samsung.com/us/business/monitors/gaming/24-inch-odyssey-g3-g30d-fhd-180hz-1ms-gaming-monitor-with-ergonomic-stand-sku-ls24dg302enxza/; https://www.samsung.com/us/business/monitors/flat/24-s30gd-business-essential-monitor-with-ips-panel-and-tilt-only-stand-100hz-refresh-rate-sku-ls24d304ganxza/; https://www.samsung.com/us/tvs/qled-tv/43-inch-neo-qled-4k-qn70h-sku-qn43qn70hafxza/; https://www.samsung.com/us/smartphones/galaxy-s24/; https://www.samsung.com/us/smartphones/galaxy-z-fold7/;

https://www.samsung.com/us/business/computing/galaxy-books/galaxy-book4-series/buy/galaxy-book4-15-6-intel-core-7-512gb-silver-np750xgk-ks2us/. *See also* https://www.samsung.com/us/support/home-appliances/refrigerators/3-door-french-door/family-hub/ (Samsung Family Hub refrigerators).

97. Unless otherwise stated, references to "Samsung" in the Counts below refer to SEC and SEA, which make, import, offer for sale, sell, and support the finished Accused Products identified in those Counts.

98. As set forth in greater detail below, Samsung infringes one or more of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), and/or (c).

## COUNT I: INFRINGEMENT OF THE '368 PATENT

99. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

100. Samsung is and has been directly infringing one or more claims of the '368 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

101. For example, exemplary Claim 1 of the '368 Patent is directed to:

> 1. A backlight module, comprising:
>
> a light guide plate comprising a light entering surface;
>
> an illumination device opposite to the light guide plate, the illumination device comprising a supporting member, and at least one light emitting diode formed at the supporting member and electrically connected to the supporting member; and
>
> two reflection sheets integrally formed with both the supporting member and the light guide plate, one of the reflection sheets directly covering a part of a top side of the light guide plate adjacent to the light entering surface, and the other of the reflection sheets directly covering a part of a bottom side of the light guide plate adjacent to the light entering surface.

102. Samsung's laptop computers with liquid crystal displays, including at least the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US), practice each element of at least, but not limited to, Claim 1 of the '368 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung Galaxy Book4 laptop practices each element of Claim 1 of the '368 Patent is attached as Exhibit 1 and is incorporated by reference.

103. The Samsung Galaxy Book4 is a laptop computer whose liquid crystal display employs an edge-lit LED backlight module. Physical teardown analysis of the accused laptop shows that its backlight module includes a light guide plate having a light entering surface; an illumination device opposite the light guide plate, the illumination device comprising a supporting member and light emitting diodes; and two reflection sheets covering parts of the top and bottom sides of the light guide plate adjacent to the light entering surface, the second reflection sheet having a reflective back surface. On information and belief, the light emitting diodes are formed at, and electrically connected to, the supporting member. On information and belief, the reflection sheets are integrally formed with both the supporting member and the light guide plate, consistent with the assembled structure of the backlight module at its light-entry edge.

104. Samsung has had actual knowledge of the '368 Patent, and of its infringement of the '368 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 1.

105. Samsung is and has been infringing one or more claims of the '368 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US) has been and is being sold,

offered for sale, and/or used by Samsung's retail partners, customers, and/or end users. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US).

106. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '368 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '368 Patent, including but not limited to at least Claim 1.

107. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US), on its website and elsewhere to induce third parties, including Samsung's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '368 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/business/computing/galaxy-books/galaxy-book4-series/buy/galaxy-book4-15-6-intel-core-7-512gb-silver-np750xgk-ks2us/.

108. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US), to induce third parties, including Samsung's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '368

Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/model/NP750XGK-KS2US/.

109. Despite Samsung's knowledge of the '368 Patent and Samsung's infringement of the '368 Patent, Samsung has continued to induce third parties, including Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US), to infringe one or more claims of the '368 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung's retail partners, customers, and/or end users, of one or more claims of the '368 Patent, including but not limited to at least Claim 1.

110. Samsung has therefore induced infringement by others of one or more claims of the '368 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '368 Patent and with knowledge that such acts infringe one or more claims of the '368 Patent, including but not limited to at least Claim 1.

111. Samsung is and has been infringing one or more claims of the '368 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US), within this District and throughout the United States. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Galaxy Book4 15.6-inch laptop (Model No. NP750XGK-KS2US). The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the '368 Patent, including but not limited to at least Claim 1,

and (i) are a material part of the inventions claimed in the ’368 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’368 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

112. Samsung has therefore contributed to the infringement by others of one or more claims of the ’368 Patent, including but not limited to at least Claim 1.

113. Samsung’s infringement of one or more claims of the ’368 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’368 Patent and Samsung’s infringement of the ’368 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’368 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result, Samsung deliberately and intentionally infringed the ’368 Patent, and continues to do so, after receiving express and actual knowledge of both the ’368 Patent and its infringement thereof.

114. Samsung’s infringement of the ’368 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**COUNT II: INFRINGEMENT OF THE ’278 PATENT**

115. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

116. Samsung is and has been directly infringing one or more claims of the ’278 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

117. For example, exemplary Claim 1 of the ’278 Patent is directed to:

> 1. A liquid crystal panel comprising:
>
> a thin film transistor (TFT) substrate, which comprises a common electrode and a ground electrode;
>
> a color filter (CF) substrate opposite to the TFT substrate, the CF substrate comprising a conductive layer formed thereat;
>
> a liquid crystal layer sandwiched between the TFT and the CF substrates; and
>
> a sealant provided between the TFT substrate and the CF substrate at a peripheral region of the TFT substrate and the CF substrate;
>
> wherein the conductive layer is adjacent to the liquid crystal layer and does not cover the peripheral region of the CF substrate, the common electrode is adjacent to the liquid crystal layer, the ground electrode is formed at the peripheral region of the TFT substrate and is generally adjacent to the common electrode, the common electrode and the ground electrode are insulated from each other via a groove, and the sealant encloses the conductive layer and the common electrode therein and covers the ground electrode.

118. Samsung’s liquid crystal display monitors, including at least the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA), practice each element of at least, but not limited to, Claim 1 of the ’278 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung S30GD monitor practices each element of Claim 1 of the ’278 Patent is attached as Exhibit 2 and is incorporated by reference.

119. The Samsung S30GD monitor contains a liquid crystal panel. Physical teardown analysis of the accused monitor, including optical microscope imaging and cross-sectional SEM imaging of its display panel, shows a first substrate having conductive structures formed at a peripheral region thereof; a second substrate opposite to the first substrate; a liquid crystal layer

sandwiched between the substrates; and a sealant provided at the peripheral region. On information and belief, the peripheral structures of the first substrate include a common electrode and a ground electrode insulated from each other through a groove; the second substrate includes a conductive layer that leaves the peripheral region of the second substrate uncovered; and the sealant encloses the conductive layer and the common electrode and covers the ground electrode.

120. Samsung has had actual knowledge of the ’278 Patent, and of its infringement of the ’278 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 2.

121. Samsung is and has been infringing one or more claims of the ’278 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA) has been and is being sold, offered for sale, and/or used by Samsung’s retail partners, customers, and/or end users. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA).

122. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’278 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’278 Patent, including but not limited to at least Claim 1.

123. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA), on its website and elsewhere to induce third parties, including Samsung's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '278 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/business/monitors/flat/24-s30gd-business-essential-monitor-with-ips-panel-and-tilt-only-stand-100hz-refresh-rate-sku-ls24d304ganxza/.

124. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA), to induce third parties, including Samsung's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '278 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/.

125. Despite Samsung's knowledge of the '278 Patent and Samsung's infringement of the '278 Patent, Samsung has continued to induce third parties, including Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA), to infringe one or more claims of the '278 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung's retail partners, customers, and/or end users, of one or more claims of the '278 Patent, including but not limited to at least Claim 1.

126. Samsung has therefore induced infringement by others of one or more claims of the ’278 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’278 Patent and with knowledge that such acts infringe one or more claims of the ’278 Patent, including but not limited to at least Claim 1.

127. Samsung is and has been infringing one or more claims of the ’278 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, including the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA), within this District and throughout the United States. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung S30GD 24-inch Essential monitor (Model No. LS24D304GANXZA). The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the ’278 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’278 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’278 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

128. Samsung has therefore contributed to the infringement by others of one or more claims of the ’278 Patent, including but not limited to at least Claim 1.

129. Samsung’s infringement of one or more claims of the ’278 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’278 Patent and Samsung’s

infringement of the ’278 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’278 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result, Samsung deliberately and intentionally infringed the ’278 Patent, and continues to do so, after receiving express and actual knowledge of both the ’278 Patent and its infringement thereof.

130. Samsung’s infringement of the ’278 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF THE ’668 PATENT

131. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

132. Samsung is and has been directly infringing one or more claims of the ’668 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

133. For example, exemplary Claim 1 of the ’668 Patent is directed to:

> 1. A display device, comprising:
>
> a display panel;
>
> a circuit board electrically connected to the display panel and having at least one fixing portion; and
>
> a backlight module disposed at one side of the display panel, wherein the backlight module comprises:
>
> at least one light source;

> a lamp cover having an inner surface and an outer surface, wherein the at least one light source is at least partially surrounded by the inner surface; and
>
> at least one protruding portion located at the outer surface and integrated with the lamp cover to serve as a fixing structure;
>
> wherein
>
> the circuit board is disposed on the outer surface of the lamp cover; and
>
> the at least one protruding portion is in contact with the at least one fixing portion for constraining movements of the circuit board relative to the lamp cover.

134. Samsung's display devices, including at least the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), practice each element of at least, but not limited to, Claim 1 of the '668 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung Odyssey G3 G30D monitor practices each element of Claim 1 of the '668 Patent is attached as Exhibit 3 and is incorporated by reference.

135. The Samsung Odyssey G3 G30D monitor is a display device with a display panel, a circuit board electrically connected to the display panel, and an edge-lit backlight module. Physical teardown analysis of the accused monitor shows a lamp cover having an inner surface and an outer surface, with the backlight's light sources surrounded by the inner surface of the lamp cover; at least one protruding portion located at the outer surface of the lamp cover; and the circuit board disposed on the outer surface of the lamp cover. On information and belief, when the monitor is assembled, the protruding portion is in contact with a fixing portion of the circuit board, constraining movements of the circuit board relative to the lamp cover.

136. Samsung has had actual knowledge of the '668 Patent, and of its infringement of the '668 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 3.

137. Samsung is and has been infringing one or more claims of the ’668 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA) has been and is being sold, offered for sale, and/or used by Samsung’s retail partners, customers, and/or end users. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA).

138. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’668 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’668 Patent, including but not limited to at least Claim 1.

139. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), on its website and elsewhere to induce third parties, including Samsung’s retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the ’668 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/business/monitors/gaming/24-inch-odyssey-g3-g30d-fhd-180hz-1ms-gaming-monitor-with-ergonomic-stand-sku-ls24dg302enxza/.

140. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), to induce third parties, including Samsung's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '668 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/model/LS24DG302ENXZA/.

141. Despite Samsung's knowledge of the '668 Patent and Samsung's infringement of the '668 Patent, Samsung has continued to induce third parties, including Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), to infringe one or more claims of the '668 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung's retail partners, customers, and/or end users, of one or more claims of the '668 Patent, including but not limited to at least Claim 1.

142. Samsung has therefore induced infringement by others of one or more claims of the '668 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '668 Patent and with knowledge that such acts infringe one or more claims of the '668 Patent, including but not limited to at least Claim 1.

143. Samsung is and has been infringing one or more claims of the '668 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA),

within this District and throughout the United States. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA). The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the '668 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the '668 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '668 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

144. Samsung has therefore contributed to the infringement by others of one or more claims of the '668 Patent, including but not limited to at least Claim 1.

145. Samsung's infringement of one or more claims of the '668 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the '668 Patent and Samsung's infringement of the '668 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the '668 Patent, including but not limited to at least Claim 1, in disregard of IDUNN's patent rights. As a result, Samsung deliberately and intentionally infringed the '668 Patent, and continues to do so, after receiving express and actual knowledge of both the '668 Patent and its infringement thereof.

146. Samsung's infringement of the '668 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to

35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**COUNT IV: INFRINGEMENT OF THE '624 PATENT**

147. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

148. Samsung is and has been directly infringing one or more claims of the '624 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

149. For example, exemplary Claim 1 of the '624 Patent is directed to:

> 1. An organic light emitting display device comprising:
>
> an active matrix substrate comprising an array of active elements disposed in an active region and a control circuit disposed in a peripheral region;
>
> a color filter substrate oppositely disposed to the active matrix substrate, comprising:
>
> color filter elements with different colors;
>
> a black matrix layer enclosing the color filter elements in a region corresponding to the active region; and
>
> an extension of the black matrix layer in a region corresponding to the peripheral region;
>
> an array of OLED pixels interposed between the active matrix substrate and the color filter substrate on the active region, wherein each of the OLED pixels comprise an anode, an organic electroluminescent layer, and a cathode;
>
> a first conductive component electrically connecting the control circuit and the extension of the black matrix layer; and
>
> a second conductive component electrically connecting the black matrix layer and the cathode.

150. Samsung's foldable smartphones with polarizer-less OLED displays, including at least the Samsung Galaxy Z Fold7, Galaxy Z Fold6, Galaxy Z Fold5, Galaxy Z Fold4, and Galaxy

Z Fold3, and, on information and belief, the Samsung Galaxy Z Flip7, practice each element of at least, but not limited to, Claim 1 of the ’624 Patent. A claim chart demonstrating, on information and belief and on a limitation-by-limitation basis, how the Samsung Galaxy Z Fold7 practices each element of Claim 1 of the ’624 Patent is attached as Exhibit 4 and is incorporated by reference.

151. The Galaxy foldables contain active-matrix OLED display panels supplied by Samsung Display Co., Ltd. (“Samsung Display”), an affiliate of SEC. Samsung Display has publicly described the display technology it introduced with the Galaxy Z Fold3 in 2021, and has applied to its foldable smartphone panels since, as a “polarizer-free OLED panel” that “eliminates the need for an additional polarizer layer” and instead uses a “panel-stacking structure” to block external light reflection. Samsung Display states that this technology, which it markets under the names Eco²OLED™ and on-cell film (“OCF”), “is also referred to as Color Filter on Encapsulation (COE),” and that “OCF technology was first applied to foldable smartphones with the Galaxy Z Fold 3 in 2021.” *See* https://global.samsungdisplay.com/28402; https://global.samsungdisplay.com/31141; https://global.samsungdisplay.com/31344. Industry reports describe the same structure as replacing the polarizer “with a color filter” while the pixel define layer “is also replaced with a black PDL,” and as a stack comprising a black pixel define layer, a black matrix, and color filter elements patterned over the red, green, and blue OLED sub-pixels on the panel’s thin-film encapsulation. *See, e.g.,* https://www.thelec.net/news/articleView.html?idxno=5173; https://en.ubiresearchnet.com/samsung-display-pol-less-oled/; https://displaydaily.com/samsung-s-z-fold-3-thinning-innovations-could-make-all-flexible-oleds-brighter/. On information and belief, the Galaxy Z Fold4 through Galaxy Z Fold7 use successive generations of the same polarizer-less color-filter-on-encapsulation panel architecture, and the Galaxy Z Flip7 uses that

architecture as well. *See, e.g.,* https://www.androidheadlines.com/2022/08/galaxy-z-fold-4-power-efficient-eco2-oled-plus-display-samsung.html; https://sammyguru.com/samsung-upgrades-galaxy-z-flip-7-with-coe-display-tech/.

152. On information and belief, in each of the Galaxy foldables, the OLED display panel comprises an active matrix substrate carrying an array of thin-film-transistor active elements in the active (display) region of the panel and a control circuit in the peripheral region surrounding it; an array of OLED pixels on the active region, each comprising an anode, an organic electroluminescent layer, and a cathode; and a color filter substrate oppositely disposed to the active matrix substrate, carrying a color filter layer comprising red, green, and blue color filter elements enclosed by a black light-blocking matrix layer in the region corresponding to the active region, such that the OLED pixels are interposed between the active matrix substrate and the color filter substrate. On information and belief, the black matrix layer extends into the region corresponding to the peripheral region of the panel, a first conductive component electrically connects the control circuit and that extension of the black matrix layer, and a second conductive component electrically connects the black matrix layer and the cathode.

153. Samsung has had actual knowledge of the ’624 Patent, and of its infringement of the ’624 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 4.

154. Samsung is and has been infringing one or more claims of the ’624 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Galaxy foldables, including the Samsung Galaxy Z Fold7, have been and are being sold, offered for sale,

and/or used by Samsung's retail partners, customers, and/or end users. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Galaxy foldables.

155. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '624 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1.

156. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Galaxy foldables, including the Samsung Galaxy Z Fold7, on its website and elsewhere to induce third parties, including Samsung's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/smartphones/galaxy-z-fold7/; https://news.samsung.com/us/samsung-galaxy-z-fold7-raising-the-bar-for-smartphones/.

157. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Galaxy foldables, including the Samsung Galaxy Z Fold7, to induce third parties, including Samsung's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/.

158. Despite Samsung's knowledge of the '624 Patent and Samsung's infringement of the '624 Patent, Samsung has continued to induce third parties, including Samsung's retail partners, customers, and/or end users of the Accused Products, including the Galaxy foldables, including the Samsung Galaxy Z Fold7, to infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung's retail partners, customers, and/or end users, of one or more claims of the '624 Patent, including but not limited to at least Claim 1.

159. Samsung has therefore induced infringement by others of one or more claims of the '624 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '624 Patent and with knowledge that such acts infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1.

160. Samsung is and has been infringing one or more claims of the '624 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, including the Galaxy foldables, including the Samsung Galaxy Z Fold7, within this District and throughout the United States. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Galaxy foldables. The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the '624 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the '624 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '624 Patent. Any other use of such

display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

161. Samsung has therefore contributed to the infringement by others of one or more claims of the ’624 Patent, including but not limited to at least Claim 1.

162. Samsung’s infringement of one or more claims of the ’624 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’624 Patent and Samsung’s infringement of the ’624 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’624 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result, Samsung deliberately and intentionally infringed the ’624 Patent, and continues to do so, after receiving express and actual knowledge of both the ’624 Patent and its infringement thereof.

163. Samsung’s infringement of the ’624 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT V: INFRINGEMENT OF THE ’033 PATENT

164. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

165. Samsung is and has been directly infringing one or more claims of the ’033 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of

equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

166. For example, exemplary Claim 1 of the ’033 Patent is directed to:

> 1. A display device, comprising:
>
> a backlight module, including:
>
> a bottom frame;
>
> a light guide, disposed above the bottom frame;
>
> an optical film structure, disposed above the light guide; and
>
> a top frame, covering a periphery of the optical film structure and covering a lateral side of the bottom frame, wherein the top frame includes:
>
> a first board; and
>
> a second board connected to the first board and covering a lateral surface of the light guide; and
>
> a panel, disposed above the top frame, wherein the first board is disposed between the optical film structure and the panel.

167. Samsung’s display devices, including at least the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), practice each element of at least, but not limited to, Claim 1 of the ’033 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung Odyssey G3 G30D monitor practices each element of Claim 1 of the ’033 Patent is attached as Exhibit 5 and is incorporated by reference.

168. The Samsung Odyssey G3 G30D monitor is a display device with a backlight module and a panel. Physical teardown analysis of the accused monitor shows a bottom frame; a light guide disposed above the bottom frame; an optical film structure disposed above the light guide; a top frame covering a periphery of the optical film structure and covering a lateral side of the bottom frame; and the panel disposed above the top frame, with the top frame including a first board between the optical film structure and the panel and a second board. On information and belief, the second board is connected to the first board and covers a lateral surface of the light guide.

169. Samsung has had actual knowledge of the '033 Patent, and of its infringement of the '033 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 5.

170. Samsung is and has been infringing one or more claims of the '033 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA) has been and is being sold, offered for sale, and/or used by Samsung's retail partners, customers, and/or end users. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA).

171. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '033 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '033 Patent, including but not limited to at least Claim 1.

172. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), on its website and elsewhere to induce third parties, including Samsung's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner

that would infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/business/monitors/gaming/24-inch-odyssey-g3-g30d-fhd-180hz-1ms-gaming-monitor-with-ergonomic-stand-sku-ls24dg302enxza/.

173. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), to induce third parties, including Samsung’s retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/model/LS24DG302ENXZA/.

174. Despite Samsung’s knowledge of the ’033 Patent and Samsung’s infringement of the ’033 Patent, Samsung has continued to induce third parties, including Samsung’s retail partners, customers, and/or end users of the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), to infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung’s retail partners, customers, and/or end users, of one or more claims of the ’033 Patent, including but not limited to at least Claim 1.

175. Samsung has therefore induced infringement by others of one or more claims of the ’033 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’033 Patent and with knowledge that such acts infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1.

176. Samsung is and has been infringing one or more claims of the ’033 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA), within this District and throughout the United States. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Odyssey G3 G30D 24-inch FHD gaming monitor (Model No. LS24DG302ENXZA). The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the ’033 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’033 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’033 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

177. Samsung has therefore contributed to the infringement by others of one or more claims of the ’033 Patent, including but not limited to at least Claim 1.

178. Samsung’s infringement of one or more claims of the ’033 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’033 Patent and Samsung’s infringement of the ’033 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result,

Samsung deliberately and intentionally infringed the ’033 Patent, and continues to do so, after receiving express and actual knowledge of both the ’033 Patent and its infringement thereof.

179. Samsung’s infringement of the ’033 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VI: INFRINGEMENT OF THE ’425 PATENT

180. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

181. Samsung is and has been directly infringing one or more claims of the ’425 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

182. For example, exemplary Claim 1 of the ’425 Patent is directed to:

> 1. An organic light emitting diode, comprising:
>
> a reflecting layer;
>
> a resonance enhancing layer disposed on the reflecting layer;
>
> a first electrode disposed on the resonance enhancing layer, wherein the resonance enhancing layer is disposed between the reflecting layer and the first electrode;
>
> an organic layer disposed on the first electrode; and
>
> a second electrode disposed on the organic layer, wherein the organic layer is disposed between the first electrode and the second electrode,
>
> wherein a thickness of the resonance enhancing layer is in a range from 500 nm to 10 μm.

183. Samsung's smartphones and wearable devices with OLED displays, including at least the Samsung Galaxy S24 smartphone and, on information and belief, the Galaxy Watch wearables, practice each element of at least, but not limited to, Claim 1 of the '425 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung Galaxy S24 practices each element of Claim 1 of the '425 Patent is attached as Exhibit 6 and is incorporated by reference. On information and belief, the Galaxy Watch wearables incorporate Samsung active-matrix OLED display panels of substantially similar construction to the Galaxy S24's display panel in the respects relevant to the '425 Patent.

184. The Samsung Galaxy S24 contains an active-matrix OLED display. Physical teardown analysis of the accused smartphone, including cross-sectional SEM imaging and EDX elemental analysis of its display panel, shows organic light emitting diodes comprising a reflecting layer; a resonance enhancing layer disposed on the reflecting layer; a first electrode disposed on the resonance enhancing layer; an organic layer disposed on the first electrode; and a second electrode disposed on the organic layer. Cross-sectional measurement shows that the resonance enhancing layer is approximately 4 µm thick, within the claimed range of 500 nm to 10 µm; the '425 Patent expressly discloses a resonance enhancing layer thickness "in a range from 500 nm to 10 µm," including an embodiment "in a range from 1 µm to 5 µm." '425 Patent at 2:58-62.

185. Samsung has had actual knowledge of the '425 Patent, and of its infringement of the '425 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 6.

186. Samsung is and has been infringing one or more claims of the '425 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, within this District

and throughout the United States. For example, on information and belief, at least the Samsung Galaxy S24 smartphone has been and is being sold, offered for sale, and/or used by Samsung's retail partners, customers, and/or end users. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Galaxy S24 smartphone.

187. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '425 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '425 Patent, including but not limited to at least Claim 1.

188. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung Galaxy S24 smartphone, on its website and elsewhere to induce third parties, including Samsung's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '425 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/smartphones/galaxy-s24/.

189. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung Galaxy S24 smartphone, to induce third parties, including Samsung's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a

manner that would infringe one or more claims of the ’425 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/.

190. Despite Samsung’s knowledge of the ’425 Patent and Samsung’s infringement of the ’425 Patent, Samsung has continued to induce third parties, including Samsung’s retail partners, customers, and/or end users of the Accused Products, including the Samsung Galaxy S24 smartphone, to infringe one or more claims of the ’425 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung’s retail partners, customers, and/or end users, of one or more claims of the ’425 Patent, including but not limited to at least Claim 1.

191. Samsung has therefore induced infringement by others of one or more claims of the ’425 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’425 Patent and with knowledge that such acts infringe one or more claims of the ’425 Patent, including but not limited to at least Claim 1.

192. Samsung is and has been infringing one or more claims of the ’425 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, including the Samsung Galaxy S24 smartphone, within this District and throughout the United States. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung Galaxy S24 smartphone. The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the ’425 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’425 Patent and (ii) are not staple articles

or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’425 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

193. Samsung has therefore contributed to the infringement by others of one or more claims of the ’425 Patent, including but not limited to at least Claim 1.

194. Samsung’s infringement of one or more claims of the ’425 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’425 Patent and Samsung’s infringement of the ’425 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’425 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result, Samsung deliberately and intentionally infringed the ’425 Patent, and continues to do so, after receiving express and actual knowledge of both the ’425 Patent and its infringement thereof.

195. Samsung’s infringement of the ’425 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VII: INFRINGEMENT OF THE ’305 PATENT

196. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

197. Samsung is and has been directly infringing one or more claims of the ’305 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

198. For example, exemplary Claim 1 of the ’305 Patent is directed to:

> 1. A touch display apparatus, comprising:
>
> a display panel including a first substrate and a second substrate disposed oppositely, wherein the first substrate has a first side, the second substrate has a second side corresponding to the first side, and the first side is disposed beyond the second side;
>
> a touch panel, including a touch substrate, wherein the second substrate is disposed between the touch substrate and the first substrate, and the area of the touch substrate is less than or equal to that of the second substrate, wherein the touch substrate has a third side, and the second substrate has a side corresponding to the third side, and the third side is disposed beyond the side of the second substrate corresponding to the third side; and
>
> a buffer element disposed between the touch substrate and the first substrate and adjacent to the third side of the touch substrate, wherein the buffer element has a lengthwise direction, and along the lengthwise direction, the buffer element has a first length, the first substrate has a second length and the touch substrate has a third length, and the first length is less than or equal to the second length and is larger than or equal to the third length.

199. Samsung’s display devices with integrated touch displays, including at least Samsung Family Hub refrigerators incorporating a 21.5-inch Family Hub touch display, such as the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA), practice each element of at least, but not limited to, Claim 1 of the ’305 Patent. On information and belief, other Samsung Family Hub refrigerator models incorporate the same 21.5-inch Family Hub touch display module and likewise practice each element of at least Claim 1 of the ’305 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung RF265BEAESR Family Hub refrigerator practices each element of Claim 1 of the ’305 Patent is attached as Exhibit 7 and is incorporated by reference.

200. The Samsung RF265BEAESR refrigerator incorporates a 21.5-inch touch display apparatus. Physical teardown analysis of the accused display module, including optical microscope imaging and cross-sectional SEM imaging, shows a display panel including a first substrate and a second substrate disposed oppositely, the first substrate having a first side disposed beyond the corresponding second side of the second substrate; and a touch panel including a touch substrate, with the second substrate disposed between the touch substrate and the first substrate. On information and belief, the area of the touch substrate is less than or equal to the area of the second substrate, and a buffer element is disposed between the touch substrate and the first substrate. The buffer element is identified in the teardown photographs included in Exhibit 7. On information and belief, the buffer element satisfies the length relationships recited in Claim 1 along its lengthwise direction; those dimensional relationships are addressed on a limitation-by-limitation basis in Exhibit 7.

201. Samsung has had actual knowledge of the ’305 Patent, and of its infringement of the ’305 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 7.

202. Samsung is and has been infringing one or more claims of the ’305 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA) has been and is being sold, offered for sale, and/or used by Samsung’s retail partners, customers, and/or end users. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least

by selling, offering to sell, and/or using the Accused Products, including the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA).

203. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’305 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’305 Patent, including but not limited to at least Claim 1.

204. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA), on its website and elsewhere to induce third parties, including Samsung’s retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the ’305 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/home-appliances/refrigerators/3-door-french-door/family-hub/.

205. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA), to induce third parties, including Samsung’s retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the ’305 Patent, including but not limited to at least Claim 1. *See,*

*e.g.,* https://www.samsung.com/us/support/home-appliances/refrigerators/3-door-french-door/family-hub/.

206. Despite Samsung's knowledge of the '305 Patent and Samsung's infringement of the '305 Patent, Samsung has continued to induce third parties, including Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA), to infringe one or more claims of the '305 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung's retail partners, customers, and/or end users, of one or more claims of the '305 Patent, including but not limited to at least Claim 1.

207. Samsung has therefore induced infringement by others of one or more claims of the '305 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '305 Patent and with knowledge that such acts infringe one or more claims of the '305 Patent, including but not limited to at least Claim 1.

208. Samsung is and has been infringing one or more claims of the '305 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung's retail partners, customers, and/or end users of the Accused Products, including the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA), within this District and throughout the United States. Direct infringement by Samsung's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung 24.2 cu. ft. French Door Refrigerator with Family Hub (Model No. RF265BEAESR/AA). The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the '305

Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’305 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’305 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

209. Samsung has therefore contributed to the infringement by others of one or more claims of the ’305 Patent, including but not limited to at least Claim 1.

210. Samsung’s infringement of one or more claims of the ’305 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’305 Patent and Samsung’s infringement of the ’305 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’305 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result, Samsung deliberately and intentionally infringed the ’305 Patent, and continues to do so, after receiving express and actual knowledge of both the ’305 Patent and its infringement thereof.

211. Samsung’s infringement of the ’305 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**<u>COUNT VIII: INFRINGEMENT OF THE ’236 PATENT</u>**

212. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

213. Samsung is and has been directly infringing one or more claims of the ’236 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

214. For example, exemplary Claim 1 of the ’236 Patent is directed to:

> 1. A backlight module, comprising:
>
> a light guiding plate having a first side surface and a second side surface;
>
> a plurality of light sources arranged along the second side surface of the light guiding plate;
>
> an optical film disposed above the light guiding plate;
>
> a quantum dot enhancement film disposed between the light guiding plate and the optical film, wherein the quantum dot enhancement film comprises a first edge and a second edge, the first edge is adjacent to the first side surface of the light guiding plate, and the second edge is adjacent to the second side surface of the light guiding plate; and
>
> a frame disposed outside the light guiding plate, the frame having a first extension portion and a second extension portion, wherein the first extension portion covers the first edge of the quantum dot enhancement film, and the second extension portion covers the second edge of the quantum dot enhancement film,
>
> wherein a distance between an end of the first extending portion and the first edge of the quantum dot enhancement film is a first distance, a distance between an end of the second extension portion and the second edge of the quantum dot enhancement film is a second distance, and the second distance is greater than the first distance.

215. Samsung’s quantum-dot televisions, including at least the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA), practice each element of at least, but not limited to, Claim 1 of the ’236 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the Samsung QN70H television practices each element of Claim 1 of the ’236 Patent is attached as Exhibit 8 and is incorporated by reference.

216. The Samsung QN70H television is a quantum-dot display device with an LED backlight module. Physical teardown analysis of the accused television shows a light guiding plate

having a first side surface and a second side surface; a plurality of light sources arranged along the second side surface of the light guiding plate; an optical film disposed above the light guiding plate; a film, identified on information and belief as a quantum dot enhancement film, disposed between the light guiding plate and the optical film, with a first edge adjacent to the first side surface and a second edge adjacent to the second side surface; and a frame disposed outside the light guiding plate having first and second extension portions covering the first and second edges of the quantum dot enhancement film, respectively. On information and belief, the distance between the end of the second extension portion and the second edge of the quantum dot enhancement film is greater than the distance between the end of the first extension portion and the first edge, consistent with caliper measurements of the frame geometry at the light-source edge taken during the teardown and shown in Exhibit 8.

217. Samsung has had actual knowledge of the ’236 Patent, and of its infringement of the ’236 Patent alleged herein, no later than the date on which it received or was served with this Complaint and the claim chart attached as Exhibit 8.

218. Samsung is and has been infringing one or more claims of the ’236 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA) has been and is being sold, offered for sale, and/or used by Samsung’s retail partners, customers, and/or end users. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA).

219. On information and belief, Samsung supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’236 Patent, including but not limited to at least Claim 1, to induce third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’236 Patent, including but not limited to at least Claim 1.

220. On information and belief, Samsung markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA), on its website and elsewhere to induce third parties, including Samsung’s retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Products in a manner that would infringe one or more claims of the ’236 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/tvs/qled-tv/43-inch-neo-qled-4k-qn70h-sku-qn43qn70hafxza/.

221. On information and belief, Samsung furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA), to induce third parties, including Samsung’s retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the ’236 Patent, including but not limited to at least Claim 1. *See, e.g.,* https://www.samsung.com/us/support/model/QN43QN70HAFXZA/.

222. Despite Samsung’s knowledge of the ’236 Patent and Samsung’s infringement of the ’236 Patent, Samsung has continued to induce third parties, including Samsung’s retail partners,

customers, and/or end users of the Accused Products, including the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA), to infringe one or more claims of the ’236 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. Samsung knew or should have known that those acts would induce actual infringement by third parties, including Samsung’s retail partners, customers, and/or end users, of one or more claims of the ’236 Patent, including but not limited to at least Claim 1.

223. Samsung has therefore induced infringement by others of one or more claims of the ’236 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’236 Patent and with knowledge that such acts infringe one or more claims of the ’236 Patent, including but not limited to at least Claim 1.

224. Samsung is and has been infringing one or more claims of the ’236 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example Samsung’s retail partners, customers, and/or end users of the Accused Products, including the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA), within this District and throughout the United States. Direct infringement by Samsung’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the Samsung QN70H 43-inch Class Neo QLED 4K television (Model No. QN43QN70HAFXZA). The display devices supplied by Samsung are especially made or especially adapted to practice the inventions claimed in the ’236 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’236 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’236 Patent. Any

other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

225. Samsung has therefore contributed to the infringement by others of one or more claims of the ’236 Patent, including but not limited to at least Claim 1.

226. Samsung’s infringement of one or more claims of the ’236 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, Samsung has actual knowledge of the ’236 Patent and Samsung’s infringement of the ’236 Patent. Despite that knowledge, Samsung did not and has not ceased its infringing activities. Samsung has continued to infringe one or more claims of the ’236 Patent, including but not limited to at least Claim 1, in disregard of IDUNN’s patent rights. As a result, Samsung deliberately and intentionally infringed the ’236 Patent, and continues to do so, after receiving express and actual knowledge of both the ’236 Patent and its infringement thereof.

227. Samsung’s infringement of the ’236 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## **DEMAND FOR JURY TRIAL**

228. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, IDUNN demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, IDUNN prays for judgment and requests that the Court find in its favor and against Defendants. IDUNN respectfully requests that the Court enter preliminary and final

orders, declarations, and judgments against Defendants as are necessary to provide IDUNN with the following relief:

a. A judgment that Defendants have infringed and/or are infringing one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, directly and indirectly, as alleged above;

b. A judgment that Defendants' infringement of one or more claims of the Asserted Patents has been willful;

c. An award for all damages and costs arising out of Defendants' infringement, to adequately compensate IDUNN for Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty, including an accounting of damages up to any verdict as well as supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

d. Pre-judgment and post-judgment interest, jointly and severally, in an amount according to proof;

e. Enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284, based on Defendants' willful infringement;

f. An accounting of damages and any future compensation due to IDUNN for Defendants' infringement (past, present, or future) not specifically accounted for in damages or other relief, and/or permanent injunctive relief;

g. A judgment that this case is exceptional, and an award of reasonable attorneys' fees as provided by 35 U.S.C. § 285 and enhanced damages as provided by 35 U.S.C. § 284;

h. An award of costs of suit; and

i. All further relief in law or in equity as the Court may deem just and proper.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Justin Constant*
Justin Constant
State Bar No. 24067551
Lead Counsel
BLUE PEAK LAW GROUP LLP
3139 W. Holcombe Blvd., PMB 8160
Houston, Texas 77025-1533
Tel./Fax: (281) 972-3036
Email: justin@bluepeak.law

Andrea L. Fair
State Bar No. 24078488
Email: andrea@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Tel.: (903) 757-6400
Fax: (903) 757-2323

Attorneys for Plaintiff
IDUNN IP Holdings LLC